IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                                     CIV 06-343 WJ/KBM
                                                          CR  02-1056 WJ

FRANK GABALDON,

    Defendant-Movant.

# **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before the Court on the original and amended § 2255 motions Frank Gabaldon filed *pro se*. They are identical in content except the amended motion contains a conclusion and proof of service sheet. *See Docs. 1, 4*. Upon review of the original motion, the Court ordered Gabaldon to show cause why it should not be denied as untimely under the applicable one-year statute of limitations. *See Doc. 3*. Thereafter, the Court permitted counsel to enter a limited appearance for Gabaldon, and to respond the order to show cause. *See Docs. 11-13*. Having reviewed the response and relevant authorities, I find no grounds for equitable tolling and recommend that this action be dismissed as untimely.

## **I.  Factual & Procedural Background**

A jury convicted Gabaldon of kidnaping, murder, and witness tampering. On direct appeal, the Tenth Circuit rejected his arguments that the evidence was insufficient to support a conviction under the federal kidnaping statute and that a defense accident reconstruction expert was impermissibly excluded from testifying. The Supreme Court denied certiorari and rehearing.

*See United States v. Gabaldon,* 389 F.3d 1090 (10th Cir. 2004), *cert. denied,* 544 U.S. 932, *reh'g denied,* 544 U.S. 1045 (2005).

In his § 2255 motions as supplemented by an extensive memorandum, Gabaldon raises five claims of error: (1) the trial judge omitted an instruction on intoxication; (2) trial counsel failed to request "specific intent" instructions relating the defense theory of intoxication; (3) trial counsel failed to secure expert and lay witnesses to rebut the government's case; (4) trial counsel, who also represented Petitioner in the direct appeal, failed to raise the issue of sufficiency of the evidence as to "specific intent;" and (5) appellate counsel failed to raise the issue that the aiding and abetting jury instruction was erroneous and confusing. *See Doc. 1* at 5-6; *Doc. 2* at 3; *Doc. 4* at 5-6.

As conceded by counsel, Gabaldon's conviction became final for purposes of the one-year statute of limitations on March 21, 2005, and his original motion was not filed until April 26, 2006, some thirty-plus days late. *See Doc. 13* at 3-4. Counsel argues, however, that the statute should be equitably tolled because Gabaldon diligently attempted to prepare and file his motion, but confiscation of his legal documents by prison authorities a month and a half before the deadline caused the delay in filing. I disagree.

First, only certain of the alleged events are set forth under penalty of perjury while others are left vague or unattested. *Compare, id.,* Exhibits A, E, F. Second, it is evident that Petitioner was receiving some sort of legal assistance in preparing certain submissions even before I permitted a limited entry of appearance by counsel. *See, e.g., Doc. 2.*[1] Third, Petitioner's

---

[1] I need not resolve here whether the assistance was from a member of the bar or jailhouse attorney, but note the Tenth Circuit's position on ghostwriting. *Duran v. Carris,* 238 F.3d 1268, 1271, 1273 (10th Cir. 2001) ("any ghostwriting of an otherwise *pro se* brief must be acknowledged by the

2

submissions change position depending on the need, and perhaps on who prepared the document.

The initial delay apparently occurred because Gabaldon mistakenly believed that the statute of limitations began to run only after the Supreme Court denied rehearing. Indeed, when he filed his petition he asserted that it was timely because the statute ran from the date of denial of the motion for rehearing:

> The one year clock commences to run on the last action in the Direct Appeal, whether the last action in the appeal was in the Circuit Court of Appeals, or United States Supreme Court. *Calderson vs. U.S. District Court of the Central District of Cal.*, 112 F.3d 836 (9th Cir. 1997).
>
> Petitioner's last action in Direct Appeal was in the United States Supreme Court, dated May 16, 2005 appeal no 04-1111. This 28 U.S.C. § 2255 motion is timely filed.

*Doc. 2* at 3. To the contrary, as noted in my Order of May 1, 2006, the statute of limitations began running on March 21, 2005 with the Supreme Court's denial of certiorari. *See Doc. 3*. The Tenth Circuit recently held that such a mistake is not grounds for tolling a month-late petition.[2]

---

signature of the attorney involved."); *Barnett v. LeMaster,* 12 Fed. Appx. 774, 779 (10th Cir. 2001) (attorney-assisted *pro se* briefs are not entitled to liberal construction).

[2]  The district court correctly found Arrington's motion was time-barred. Arrington's sentence became final on June 9, 2003, when the Supreme Court denied his petition for a writ of certiorari, regardless of the fact he filed a petition for rehearing from the denial of certiorari. *See United States v. Willis,* 202 F.3d 1279, 1280-81 (10th Cir. 2000). His § 2255 motion was filed on July 12, 2004, one month past the one year statute of limitations. Arrington's argument that he is entitled to the application of equitable tolling is without merit. His confusion about when his conviction was final does not constitute a "rare and exceptional circumstance[ ]" warranting equitable tolling of the statute. *Gibson v. Klinger,* 232 F.3d 799, 808 (10th Cir. 2000) (quotations omitted); *see also Willis,* 202 F.3d at 1281 n. 3 (case must present extraordinary circumstances to warrant equitable tolling of statute of limitations).

Gabaldon now asserts that the delay in preparing the petition is attributable to his trial attorney failing to forthwith deliver copies of his trial materials to his mother Dorothy. He maintains that further delay resulted when his attorney then delivered "20,000 - 30,0000 pages of discovery, transcripts and relevant legal documents" which his mother had to cull through to locate the "jury instructions, indictment, transcripts, witness lists, and memos pertaining to witnesses" that Gabaldon wanted. *Doc. 13,* Exh. B at 3. Neither he nor his mother tell us precisely how long the delay was, but even assuming the above is true, it is not grounds for tolling.

The record is bereft of any indication that Plaintiff was doing anything to fill out a § 2255 petition between the five months between May 2005 to November 2005. The federal § 2255 form plainly states that it is only a brief statement of facts that is necessary to present a claim. *See Doc. 1* at 5. There is no requirement that the prisoner cite any authority or attach documentation to the petition.

In addition, except for the attorney's notes on witnesses, either he or his mother could have obtained from the court clerk all of the materials he wanted to review before preparing the petition. Yet nothing in the record indicates that Petitioner pursued this avenue at any time. Because Gabaldon's mother says she paid counsel for the boxes of records given her by trial counsel, funds to pay for court copies evidently was not an issue.

In any event, Petitioner admits that by early November, he had read through his "900"

---

> Because reasonable jurists could not conclude the district court erred in dismissing Arrington's § 2255 motion as untimely, we DENY his request for a COA and dismiss his application.

*United States. v. Arrington,* ___ Fed. Appx. ___, ___, 2006 WL 1793263 at *2 (10th Cir. 6/30/06).

4

pages of transcripts and learned that his § 2255 petition would be due by March 21, 2006. *Doc. 13,* Exh. B at 4.  The transcripts should have contained recitations of the charges in the indictment, the jury instructions and the testimony of defense witnesses.  Thus, at this point the petition could have been submitted, yet Petitioner waited for copies of documents from his mother.

Gabaldon contends that, after delays occasioned by the United States Post Office and other delivery services, he finally received the documents he wanted by mid-January 2006. Plaintiff acknowledges that he then had two weeks to "read and research these documents" before his documents were confiscated on February 2, 2006 when he was placed in the Special Housing Unit for rules violations.  *Id. at 5*.  His legal papers were not returned to him until April 4, 2006. *See also id.,* Exh. G

Tolling is only available in "rare and exceptional circumstances" and is only available if the petitioner establishes two things:  that he diligently pursued his claims ***and*** failed to file due to extraordinary circumstances beyond his control.[3]  Thus, the first inquiry in tolling concerns Petitioner's ***own*** diligence, not his reliance on the actions of others.  In circumstances similar to

---

[3] *E.g., Gibson v. Klinger,* 232 F.3d 799, 808 (10th Cir. 2000) *("**Moreover,** a petitioner must diligently pursue his federal habeas claims) (emphasis added); Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) ("[equitable tolling] is ***only*** available when an inmate diligently pursues his claims ***and*** demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.") (emphasis added), 531 U.S. 1194 (2001); *see also United States v. Lee,* 163 Fed. Appx. 741, 743 (10th Cir. 2006) (emphasizing the disjunctive nature of the inquiry, citing *Gibson* and *Marsh); Berry v. Oklahoma,* 163 Fed. Appx. 703, 704 (10th Cir. 2006) ("The magistrate judge also rejected equitable tolling because Mr. Berry failed to show extraordinary circumstances justifying tolling; moreover, the lack of diligence with which Mr. Berry pursued his claims, makes equitable tolling inappropriate.").  A prisoner may also establish equitable tolling by "actual innocence," but that is not at issue here.  *E.g., Lee,* 163 Fed. Appx. at 743; *see also Doc. 13* at 4.

those here, the Tenth Circuit has found an absence of diligence.[4]  By a generous calculation, between June 2005 and January 2006, the record demonstrates little, if any, of the necessary diligence by Gabaldon.  Accordingly, he fails to demonstrate cause why this action should not be dismissed.

Having failed to establish diligence, it is unnecessary to decide whether the confiscation of his materials was "extraordinary."  Nevertheless, his arguments would fail this prong as well.  Counsel relies on the Second Circuit decision in *Valverde v. Stinson,* 224 F.3d 129 (2nd Cir. 2000) for the proposition that "confiscation of a prisoner' legal papers close to the deadline for filing . . . is a basis for equitable tolling."  *Doc. 13* at 11.  *Valverde* is readily distinguishable in several dispositive respects, however.  The *Valverde* confiscation constituted intentional misconduct on

---

[4] *See, e.g., Boyd v. Simmons,* 165 Fed. Appx. 580, 583 (10th Cir. 2006) ("Although Mr. Boyd's attempts during the limitations period to pursue his legal claims, either through the request for legal advice or relevant legal materials, could be deemed to represent some form of diligence on his part, we are not convinced these actions rise to the level required for the extraordinary relief of equitable tolling."); *United States v. Tafoya,* 164 Fed. Appx. 700, 701-702 (10th Cir. 2006) ("the district court rejected Mr. Tafoya's argument that he was entitled to equitable tolling. . . . The court reasoned that Mr. Tafoya's three letters to his attorney did not amount to a diligent pursuit of his claims.  Nor was Mr. Tafoya able to point to anything that limited his ability to file his action within the required tolling period. . . . we do not think jurists of reason would disagree with the district court that Mr. Tafoya . . . presented "rare and exceptional circumstances" warranting equitable tolling of the AEDPA limitations."); *United States v. Stutson,* 4 Fed. Appx. 569, 570-571 (10th Cir. 2001) ("Defendant argues that he is entitled to equitable tolling, however, based on his attorney's failure to relinquish the court record or answer his letters.  In support, defendant presents copies of letters written to his trial attorney in July 1998 and August 1998, a letter written to the court in November 1998, and a sentencing transcript request in December 1998.  He also presents an affidavit stating that he did not receive some of the necessary material until August 1999, when his mother found some misplaced legal materials. . . .  The circumstances presented by defendant do not show the due diligence necessary to justify equitable tolling. . . . Defendant has not shown why he did not attempt to obtain his legal materials during the twenty-seven month period between the resolution of his direct appeal and his first letter to his former attorney, and he has not demonstrated that he filed his motion diligently after receiving the sentencing hearing transcript.  He also does not explain why his mother's loss of his legal materials is anything other than excusable neglect, which does not justify equitable tolling.").

the part of a prison officer. The decision merely holds that an affirmation misconduct by the confiscating officer is sufficient to defeat a motion to dismiss and specifically discusses that a mere allegation of correctional officials confiscating legal documents is not enough to establish equitable tolling. Instead, the prisoner's own diligence must be considered aside from the improper conduct on the part of a prison official. *See* 224 F.3d at 133-36 & n. 3. Here we have no assertion of intentional illegal conduct, and a finding that Petitioner was not diligent.

Moreover, in this Circuit, legitimate placement in segregation or lockdown that occasion withholding inmate papers is not grounds for tolling particularly where, as here, there is inadequate excuse for the lack of diligence prior to restriction.[5] Other courts have so held in the

---

[5] *See, e.g., Gifford v. Everett,* 28 Fed. Appx. 748, 751 (10th Cir 2001) ("Petitioner argues that he was prevented from timely filing his petition because the prison was on lockdown from June 26, 1997 to January 1998, thereby curtailing his access to the library or to a legal assistant, and that he had a back injury that prevented him from pursuing his federal remedy. . . . Further, petitioner has not demonstrated that he diligently pursued his federal claims as he does not explain why he waited more than three years after his conviction became final before filing the state post-conviction proceeding."); *Johnson v. Saffle,* 12 Fed. Appx. 864, 867 (10th Cir. 2001) ("Inability to access legal materials for a period of thirty days does not meet the threshold of 'rare and exceptional circumstances.' . . . Moreover, Mr. Johnson does not offer an adequate explanation for his delay when he was not in lockdown."); *Pfeil v. Everett,* 9 Fed. Appx. 973, 978 (10th Cir.) ("In addition, the Supreme Court has recognized lockdowns routinely cause delays in receiving legal materials, but also ruled that "so long as they are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they result in actual injury ." . . . In this case, even if we consider Mr. Pfeil's lockdown argument as one claiming an impediment under § 2244(d)(1)(B) extending the date his conviction became final, Mr. Pfeil has not presented any evidence the lockdown was not related to legitimate penological interests."), *cert. denied,* 534 U.S. 1032 (2001); *United States v. Sterling,* 1999 WL 1020855 at *1 (10th Cir. 1999) ("Inability to access legal materials for a period of thirty one days does not rise to the level of "rare and exceptional circumstances." *See Wright v. Smith,* No. 98-6324, 1999 WL 92283 (10th Cir. Feb. 24, 1999) (unpublished)."), *cert. denied,* 529 U.S. 1078 (2000); *Sanchez v. Lytle,* 1998 WL 873064 at *2 (10th Cir. 1998) ("Sanchez argues the one-year limitation period should have been equitably tolled because of his incarceration outside the state of New Mexico and his lack of access to legal materials. According to Sanchez, prison overcrowding caused his transfer out of state in December 1995. He was allegedly returned to New Mexico in April 1996, but did not receive his legal materials until July 1996. . . . We conclude it was Sanchez' lack of diligence rather than his alleged lack of access to legal materials that prevented him from filing a timely state habeas petition.").

specific context of placement in a "Special Housing Unit" for disciplinary reasons.[6]

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2255 motion be denied and this action be dismissed as time-barred.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] *See Johnson v. Girdich,* ___ Fed. Appx. ___, ___ , 2006 WL 473886 at *2 (S.D.N.Y. 2006) ("Nor is placement in a special  housing  unit (where library access may be more restrictive) grounds for tolling," citing *Taylor v. Hodges,* 2001 U.S. Dist. LEXIS 18814, at *6 (S.D.N.Y. Nov. 26, 2001) ("[A]dministrative difficulties associated with correctional procedures such as transfers and lock-downs do not generally constitute circumstances under which equitable tolling is granted."), and *Saldana v. Artuz,* No. 99-5089, 2000 U.S. Dist. LEXIS 13395, at *6-7 (S.D.N.Y. Sept. 19, 2000) ("Hardships associated with prison conditions do not constitute the rare circumstances under which equitable  tolling  is granted."), and concluding that "[o]n these facts, the combination of Petitioner's unfamiliarity with the law, the placement in the special  housing  unit, and the alleged sluggishness of the library did not rise to the level of "confiscation" of legal materials warranting tolling under *Valverde.*"); *Lee v. Superintendent, Attica Correctional Facility,* 2006 WL 229911 at *2 (E.D.N.Y. 2006) (quoting *Johnson v. Girdich,* above, and *Lindo v. Lefever,* 193 F. Supp. 2d 659, 663 (E.D.N.Y 2002) ("Transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances"), and *Asencio v. Senkowski,* 2000 WL 1760908 at *2 n. 4 (S.D.N.Y. Nov. 30, 2000) (solitary confinement does not qualify as extraordinary circumstance"); *United States  v. Henderson,* 2005 WL 1502060 at*2 (N.D.Tex. 2005) ("He argues generally that the two and one-half year delay in filing this § 2255 motion was caused by his lock down 'in a SHU unit' with no time to research the law and access to legal material. . . .  Nevertheless, his pleadings, even when liberally construed, do no present 'rare and exceptional circumstances' warranting equitable tolling, *United States v. Riggs,* 314 F.3d 796, 799 (5th Cir. 2002), *cert. denied,* 539 U.S. 952 (2003), and that Movant diligently pursued his rights, *United States v. Patterson,* 211 F.3d 927, 930 (5th Cir. 2000).").